UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RODNEY MCCORMICK, et al. | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )   Case No. 3:19-cv-608 JD |
| | ) |
| MICHELLE GOEBEL, et al., | ) |
| | ) |
|     Defendants. | ) |

## OPINION AND ORDER

Rodney McCormick's five children were removed from his custody after the Indiana Department of Child Services received an allegation of abuse and neglect. The children were not returned to his custody until eight months later. Mr. McCormick alleges that over that time, state officials violated his and his children's rights in multiple respects, including by unreasonably seizing the children, obtaining removal orders without proper notice and based on false and misleading information, obstructing his efforts to have visitation and to regain custody over his children, and failing to provide for the children's needs. He thus filed this action on behalf of himself and each of his five minor children.

The defendants—seven officials in the Department of Child Services—moved to dismiss. They raise a variety of jurisdictional, procedural, and substantive arguments for why Mr. McCormick's claims should fail. The Court grants the motion in part, as Mr. McCormick has failed to allege how several of the defendants are responsible for any of his claims. Some aspects of his claims against the remaining defendants fail as well, though the core of his claims against those defendants remains pending.

## I.  FACTUAL BACKGROUND

The complaint alleges the following facts, which have not yet been proven, but which are used to evaluate the adequacy of the complaint. On December 9, 2016, the Indiana Department of Child Services received a call on their hotline about Rodney McCormick's five children, who then ranged in age from six to twelve. The call alleged that the children were victims of abuse, that there was no food in their home, that Mr. McCormick beat them physically, and that the children were all afraid of him. At the time, Mr. McCormick was out of the state and the children were being cared for by his mother. Caseworker Elizabeth Black was assigned to the case. She conducted interviews with each of the children in the presence of school officials and police officers, without notifying or obtaining consent from Mr. McCormick, his mother, or any of the children's mothers. Three of the children told Ms. Black that they had an attorney and that they were not supposed to talk to the Department without permission from their father or without their attorney present. The interviews went forward, though, and Ms. Black did not note those statements in her reports.

Immediately after the interviews, the Department sought an ex parte order to detain the children. Mr. McCormick alleges that the Department made false and misleading statements in support of that request. It stated that Mr. McCormick had been investigated by the Department nine times, but omitted that no allegations against Mr. McCormick had ever been substantiated. It also represented that the children acted fearful, but failed to disclose that the interviews were conducted in the presence of multiple caseworkers and several police officers. It also failed to disclose that at least one child never said anything about being afraid of or being harmed by Mr. McCormick.

The state court granted the ex parte motion to remove the children from Mr. McCormick's custody. The mother of three of the children lived in Detroit, Michigan, but she

was not notified of the children's detention or given an opportunity to care for them. Instead, those three children were placed in a group home. A fourth child was placed with his mother, even though the Department had previously substantiated allegations against her and removed the child from her care. The fifth child was placed with his maternal aunt, Kasey Hernandez, who was also an employee of the Department of Child Services. Ms. Hernandez had been involved in a contentious custody battle with Mr. McCormick for custody of that child after that child's mother passed away.

After the children were removed, a detention hearing was held on December 13, 2016, at which Mr. McCormick participated. Ms. Black testified about her interviews with the children and the allegations of abuse. The children had also undergone forensic interviews the previous day. Though several of the children denied that they were fearful of their father or of returning home, the Department falsely reported that all of the children were afraid of Mr. McCormick. At the conclusion of the hearing, the state court continued its order of detention and gave consent for the Department to file a petition alleging that the children were children in need of services.

After the hearing, the Department assigned Michelle Mussman as the case manager. The case was also overseen by Michelle Goebel, the director of the Department's LaPorte County office. Mr. McCormick alleges that, over the ensuing months, Ms. Mussman and Ms. Goebel took multiple acts that interfered with his attempts to visit with his children and to regain custody. He alleges that Ms. Mussman sought to suspend his visitation based on misrepresentations about his conduct, and that Ms. Goebel falsely stated that his therapist refused to supervise visitation, when in fact the therapist had offered to supervise. He also alleges that Ms. Mussman refused to arrange court-ordered visitation and attempted to impose conditions on his visitation that were not included in the court's orders, and that she obstructed and delayed

3

efforts to place three of the children with his mother instead of in the group home. He also alleges that Ms. Goebel instructed the children to lie to him during their visitation, and that Ms. Mussman influenced one of the children to lie about certain incidents.

Mr. McCormick alleges that the children did not receive adequate care during their separation, either. One of the children was not regularly given her medication. Another child was emotionally abused by her foster mother. Those children also reported physical abuse in their foster home. Mr. McCormick alleges that Ms. Mussman was aware of each of these problems but took no action to resolve them.

Finally, in August 2017, the proceedings were dismissed and the children were returned to Mr. McCormick's custody. Mr. McCormick then filed this action almost two years later. He filed the complaint on behalf of himself and each of his five minor children. He named as defendants seven Department employees, plus anonymous "John Doe" defendants. The complaint alleges violations of his and his children's Fourth and Fourteenth Amendment rights, among other theories, based on the defendants' actions in connection with the removal proceedings. The defendants appeared and moved to dismiss the complaint, and that motion has been fully briefed.

## II.  STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its

face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

### III.  DISCUSSION

Mr. McCormick and his children assert a number of claims against each of the defendants. The Court interprets those claims as follows. First, Mr. McCormick asserts claims on behalf of his children for being unreasonably seized when they were first interviewed and during their subsequent removal from his custody, in violation of their Fourth Amendment rights. Second, Mr. McCormick asserts claims on behalf of himself and his children for violating their substantive due process rights to familial relations in violation of the Fourteenth Amendment. They allege that the defendants did so in multiple respects, including by improperly removing the children from Mr. McCormick's custody, obstructing visitation, interfering with Mr. McCormick's pursuit of reunification with his children, and failing to provide for the children's needs while they were outside his custody. Third, Mr. McCormick asserts claims on behalf of himself and his children for violating their procedural due process rights by removing the children without pre-deprivation notice and an opportunity to be heard, and by misrepresenting facts to obtain the removal, also in violation of the Fourteenth Amendment.

The defendants raise a number of threshold and substantive arguments in support of dismissal. They first argue that the claims are barred under the *Rooker–Feldman* doctrine as appeals of the state court's removal orders. They next assert a number of affirmative defenses,

including that the claims are barred by issue preclusion and the statute of limitations, and that the defendants are entitled to quasi-judicial or witness immunity. Finally, they assert that aspects of the complaint fail to state a claim, and that the complaint fails to allege that some of the defendants were personally responsible for any of the alleged violations. The Court addresses each argument in turn.

**A.    *Rooker–Feldman***

The Court begins with the defendants' argument that the plaintiffs' claims are barred by the *Rooker–Feldman* doctrine, which concerns the Court's subject matter jurisdiction. The *Rooker–Feldman* doctrine is based on the principle that federal district courts lack appellate jurisdiction over state courts. "Among federal courts, only the Supreme Court of the United States has statutory authority to review the decisions of state courts in civil cases." *Milchtein v. Chisholm*, 880 F.3d 895, 897 (7th Cir. 2018). Thus, if a plaintiff files suit in federal district court seeking review of a state court's decision, the federal court lacks jurisdiction over that claim, "no matter how erroneous or unconstitutional the state court judgment may be." *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002).

This doctrine is narrow, though, and does not apply just because a state judgment is relevant (or even decisive) in a federal case. For example, if the plaintiff complains of independent conduct that a state judgment failed to remedy, that might implicate preclusion principles but would not deprive federal courts of jurisdiction. *Milchtein*, 880 F.3d at 898 ("If a contention in federal litigation is intertwined with the state litigation only in the sense that it entails a factual or legal contention that was, or could have been, presented to the state judge, then the connection between the state and federal cases concerns the rules of preclusion, which are not jurisdictional and are outside the scope of the *Rooker Feldman* doctrine."). That line can be difficult to draw, though. Courts have sometimes applied this doctrine by asking whether the

federal claim is "inextricably intertwined" with the state judgment. The Seventh Circuit has held more recently, though, that "[b]ecause the phrase 'inextricably intertwined' has the potential to blur this boundary [between preclusion and jurisdiction], it should not be used as a ground of decision." *Id.*; *but see Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 390–91 (7th Cir. 2019) (holding that *Rooker–Feldman* barred federal claims because they were inextricably intertwined with state court judgments, though without acknowledging *Milchtein's* admonition). Rather, the "vital question . . . is whether the federal plaintiff seeks the alteration of a state court's judgment." *Milchtein*, 880 F.3d at 898; *see also Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) ("[T]he crucial point is whether the district court is essentially being called upon to review the state court decision.").

The defendants argue that the *Rooker–Feldman* doctrine bars this action because the state court held hearings in December 2016 and entered detention orders, and that the federal claims are inextricably intertwined with those orders. The Court disagrees. Though the state court's orders are part of the sequence that give rise to Mr. McCormick's complaint, he alleges wrongful conduct distinct from any of the state court's orders. He claims, for example, that the children were wrongfully seized and interviewed before the state court became involved, and that the defendants later engaged in conduct that interfered with his visitation and his efforts to regain custody, some of which conduct came in violation of the state court's orders. Those claims do not ask the Court to set aside or review the state court's judgments, so they are not barred by the *Rooker–Feldman* doctrine. *Brokaw*, 305 F.3d at 665 ("[The plaintiff] is not merely claiming that the decision of the state court was incorrect or that the decision violated her constitutional rights; rather, she is alleging that the people involved in the decision to forcibly remove her from her home and her parents and subject her to the custody of the IDCFS violated her constitutional

7

rights, independently of the state court decision."); *Jensen v. Foley*, 295 F.3d 745, 747 (7th Cir. 2002) (holding that *Rooker–Feldman* did not apply because "the injury that the plaintiffs here complain of was caused not by the state court's temporary custody order, but by the underlying taking of [the child] by the DCFS agents and local officers").

The Court acknowledges that some parts of the complaint take issue with the state court's orders, alleging that the orders were wrong and unsupported by the evidence. At worst, though, that would narrow the claims, not bar them entirely, since the claims are not limited to those allegations. Still, the Court does not find that the *Rooker–Feldman* doctrine applies, as there is no state court judgment in effect. Though the state court entered detention orders while the state proceedings were ongoing, the children have since been returned to Mr. McCormick's custody and the state proceedings were dismissed and have concluded. The vital question "is whether the federal plaintiff seeks the alteration of a state court's judgment," but there is no longer any state court judgment in effect that could be altered by any court. *Milchtein*, 880 F.3d at 898 (holding that "[b]ecause the proceedings with respect to the [plaintiffs'] two eldest children are over, the state courts' decisions are not subject to review *anywhere*," so the claims were not barred by *Rooker–Feldman*); *see also Klein v. O'Brien*, 884 F.3d 754, 756 (7th Cir. 2018) ("[T]he Supreme Court has understood the *Rooker–Feldman* doctrine as limited to federal proceedings that ask state judgments themselves to be changed[.]"); *Richardson v. Koch Law Firm, P.C.*, 768 F.3d 732, 734 (7th Cir. 2014) (holding that *Rooker–Feldman* could no longer apply after the state court judgment was vacated). Thus, while the state court's orders may give rise to preclusion defenses or undermine the merits of Mr. McCormick's claims, they do not deprive this Court of jurisdiction.

B.     **Affirmative Defenses**

The defendants also assert an array of defenses, including that Mr. McCormick's claims are barred by issue preclusion and the statute of limitations, and that the defendants are entitled to absolute quasi-judicial immunity and absolute witness immunity. Those are each affirmative defenses, so these arguments are largely premature at this stage. First, the proper way to raise an affirmative defense at the pleading stage is to file an answer and then move for judgment on the pleadings under Rule 12(c), neither of which the defendants have done. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 n.1 (7th Cir. 2012) ("[W]e have repeatedly cautioned that the proper heading for such motions is Rule 12(c), since an affirmative defense is external to the complaint."). Even then, complaints need not address or plead around affirmative defenses, so even a likelihood that an affirmative defense will foreclose a claim does not itself warrant dismissal. *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). Instead, a complaint can only be dismissed if a plaintiff pleads himself out of court by making allegations that unambiguously establish that a claim is barred by an affirmative defense. *Id.* (stating that "dismissal is appropriate *only* when the factual allegations in the complaint unambiguously establish all the elements of the defense"); *see also Foss v. Bear, Stearns & Co.*, 394 F.3d 540, 542 (7th Cir. 2005) ("Unless the complaint alleges facts that create an ironclad defense, a limitations argument must await factual development."). Thus, when there is ambiguity as to whether an affirmative defense will apply, a claim cannot be dismissed on that basis. With that understanding, the Court addresses each of the defendants' affirmative defenses.

1.     **Issue Preclusion**

The defendants first argue that, to the extent the claims are not barred by the *Rooker–Feldman* doctrine, they are barred by issue preclusion. They argue that the state court's orders establish that there was cause to remove the children, so the plaintiffs cannot claim otherwise in

this suit. *See Jensen*, 295 F.3d at 748 ("The constitutional claims that plaintiffs brought to federal district court could succeed only if *no* probable cause existed [to remove the children]. Because the state court held otherwise, we are barred by the doctrine of issue preclusion from reconsidering the issue." (internal citation omitted)). The plaintiffs' claims assert at least in part that justification was lacking to remove the children from Mr. McCormick's custody. The state court held to the contrary in ordering the children removed, so that order may be entitled to preclusive effect. As already discussed, however, the plaintiffs also assert claims independent of any court orders, including that the defendants wrongfully seized the children prior to the hearing and engaged in misconduct after the removal order, such as by influencing the children to lie, obstructing their visitation, and failing to provide for their needs, among other allegations. Because those matters would not have been considered by the state court, these claims cannot be barred at this stage by issue preclusion.

In addition, the Seventh Circuit has drawn a distinction in similar cases between "'the sufficiency of the evidence to establish probable cause' and 'the integrity of the evidence' used to establish probable cause" to remove children. *Brokaw*, 305 F.3d at 670. Thus, where the plaintiff's claims rested in part on "the defendant's intentional misrepresentation or concealment of material facts," the court held that the state court's finding of probable cause for removal did not preclude the plaintiff's claims. *Id.* Here, the plaintiffs' claims assert in part that the defendants misrepresented and concealed information in causing the children to be removed. Thus, while issue preclusion may bear further exploration as the case proceeds, the Court cannot conclude on the basis of the pleadings that this affirmative defense warrants dismissal of the plaintiffs' claims.

### 2. Statute of Limitations

The defendants also argue that the claims are barred by the statute of limitations. Section 1983 claims are subject to two-year statutes of limitations in Indiana. *Devbrow v. Kalu*, 705 F.3d 765 (7th Cir. 2013). The defendants argue that all of the plaintiffs' claims accrued when the children were first removed from Mr. McCormick's custody in December 2016. They thus argue that the complaint, filed in August 2019—over two years after the children were removed, but under two years after the children were returned to Mr. McCormick's custody—was too late.

At the outset, this argument overlooks that the complaint asserts claims not only by Mr. McCormick himself, but also on behalf of each of the five children. In Indiana, the statute of limitations is tolled for minors until they reach the age of 18. *Black v. City of S. Bend*, No. 3:16-CV-24, 2017 WL 6611584, at *4 (N.D. Ind. Mar. 29, 2017); *Hurt v. W. Lafayette Cmty. Sch. Corp.*, 450 F. Supp. 2d 900, 902 (N.D. Ind. 2006); *see North v. Lockett*, 756 F. App'x 659, 660 (7th Cir. 2019) (noting that in § 1983 claims, "the statute of limitations and tolling rules are governed by the forum state"). All of the children were still minors when the complaint was filed [DE 2 ¶ 3], so the statute of limitations could not bar any of the children's claims.

At most, the statute of limitations could thus affect Mr. McCormick's own claims. As to those claims, however, the defendants' argument that the entirety of those claims accrued in December 2016, when the children were first removed, is untenable. Many of the injuries alleged in the complaint took place after and independent of the children's initial removal from Mr. McCormick's custody. For example, the complaint alleges that the defendants obstructed his visitation, thus interfering with his right to familial relations. Those injuries did not result from the prior removal orders—Mr. McCormick alleges that the defendants' conduct in this respect *violated* the court's orders. In addition, to the extent Mr. McCormick alleges that he was deprived of his right to familial relations by the children's removal from his custody, that claim

11

would accrue once the deprivation ends, which took place less than two years before he sued. *See Manuel v. City of Joliet*, 903 F.3d 667, 669–70 (7th Cir. 2018).

It is possible that some aspects of Mr. McCormick's claims will turn out to be time-barred. But in arguing that Mr. McCormick's claims accrued in December 2016 in their entirety, the defendants fail to account for the principle that "there is no single accrual rule for all § 1983 claims." *Sanders v. St. Joseph Cty., Ind.*, 2020 WL 1531354, at *1 (7th Cir. Mar. 31, 2020). Rather, accrual depends on the nature of the claim and the injury at issue. The defendants do not analyze the statute of limitations against the particular injuries and legal theories underlying each of Mr. McCormick's claims, but only address them in gross. Given that, and because this affirmative defense is procedurally premature at this stage anyway, the Court declines to further explore this defense at this stage.

### 3. Immunities

The defendants next argue that they are entitled to absolute quasi-judicial immunity and absolute witness immunity. Beginning with quasi-judicial immunity, that doctrine extends from the doctrine of judicial immunity, which seeks to preserve judicial independence in the decision-making process by granting judges absolute immunity for judicial acts. *See Forrester v. White*, 484 U.S. 219, 225 (1988); *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009). Quasi-judicial immunity extends that doctrine beyond judges to individuals who function as arms of the court and carry out the court's orders. *Cooney*, 583 F.3d at 970 ("Guardians ad litem and court-appointed experts . . . are absolutely immune from liability for damages when they act at the court's direction); *Schneider v. Cty. of Will*, 366 F. App'x 683, 685 (7th Cir. 2010) (noting that quasi-judicial immunity applies to individuals "performing ministerial acts under a judge's supervision and intimately related to judicial proceedings"). Defendants invoking quasi-judicial immunity bear the burden of establishing their entitlement to it. *Schneider*, 366 F. App'x at 686.

Thus, like qualified immunity, it will often be premature to resolve that defense at the pleading stage. *Id.*; *Williams v. Ind. Dep't of Child Servs.*, No. 2:17-cv-164, 2019 WL 3003906, at *3 (N.D. Ind. July 9, 2019) ("At this stage of the litigation, the Court lacks enough facts to determine whether [the defendant's] actions are entitled to quasi-judicial immunity.").

Here, the defendants argue that they are entitled to quasi-judicial immunity because the state court ordered the children to be removed and they were merely acting pursuant to that order. As with the defendants' previous arguments, though, this affirmative defense cannot be resolved at the pleading stage. Defendants invoking quasi-judicial immunity must establish that "their acts were directly and explicitly ordered by a judge," and quasi-judicial immunity does not extend "to the *manner* a judge's order was executed." *Schneider*, 366 F. App'x at 686. As already discussed, the plaintiffs' claims are not confined to the fact that the state court ordered them removed, but also include allegations about the manner in which Mr. McCormick and the children were treated while the children were held outside his custody, as well as allegations of conduct that preceded the court's involvement. The state court's orders are not in the record, either, which makes it impossible to determine at this stage to what extent the defendants' actions occurred at the court's direction. Accordingly, the Court cannot grant the motion to dismiss on this ground.

The defendants also invoke absolute witness immunity, arguing that they are absolutely immune from any claims based on testimony provided to the state court during the custody proceedings. Witnesses are entitled to absolute immunity for testimony in judicial proceedings. *Curtis v. Bembenek*, 48 F.3d 281, 283–86 (7th Cir. 1995); *Nwoke v. Palmer*, 116 F. App'x 761, 763 (7th Cir. 2004). Mr. McCormick acknowledges that point and responds only by noting that his claims extend beyond testimony. Accordingly, while this defense does not bar any of the

plaintiffs' claims in their entirety, the plaintiffs cannot seek to hold the defendants liable based on their testimony. Most notably, the complaint details caseworker Elizabeth Black's testimony at the December 9, 2016 hearing, but Ms. Black is entitled to absolute immunity for that testimony. Thus, the Court grants the motion to dismiss the claims against Ms. Black to the extent they are based on that testimony, though that does not prevent the plaintiffs from pursuing those claims based on the complaint's allegations of other conduct by Ms. Black.

## C. Failure to State a Claim

Last, the defendants argue that the complaint fails to state a claim in several respects. Again, the complaint asserts § 1983 claims for violations of the children's Fourth Amendment rights, and for violations of each of the plaintiffs' substantive and procedural due process rights under the Fourteenth Amendment. In moving to dismiss, the defendants argue that various theories referenced in the complaint are deficient, and that the complaint fails to allege a basis for holding several of the defendants liable for any of the claims.

First, the defendants argue that Mr. McCormick cannot assert a Fourth Amendment claim on his own behalf because he does not allege that he was ever seized himself. Fourth Amendment rights are personal; a plaintiff cannot sue because someone else was unreasonably searched or seized. Thus, when children are unlawfully seized, the children can assert Fourth Amendment claims, but their parents' rights are based on the due process clause. *Hernandez v. Foster*, 657 F.3d 463, 474 (7th Cir. 2011). It appears that the complaint meant to assert the Fourth Amendment claims on behalf of the children, [DE 2 ¶ 85 (alleging that the defendants "seized the named children . . . , thereby violating *their* Fourth Amendment rights" (emphasis added)), though it is somewhat ambiguous, *id.* (¶ 91 (alleging that the defendants violated "the family's Fourth Amendment" right), and Mr. McCormick did not address this issue in his response. For clarity, the Court grants the motion to the extent the complaint asserts a Fourth

Amendment claim on Mr. McCormick's own behalf. The Fourth Amendment claim on behalf of the children can go forward, though, as the defendants do not argue that the complaint fails to state a claim in that respect.

The remaining claims are the procedural due process claim and the substantive due process familial relations claim, both under the Fourteenth Amendment. *See Hernandez*, 657 F.3d 463; *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1012 (7th Cir. 2000) (holding that parents have a fundamental right to raise their children and children have an equally fundamental right to be raised and nurtured by their parents; also holding that procedural due process "at a minimum . . . requires that government officials not misrepresent the facts in order to obtain the removal of a child from his parents" and "also means that government officials will not remove a child from his home without an investigation and pre-deprivation hearing resulting in a court order of removal, absent exigent circumstances"). The defendants do not develop any argument that the complaint fails to adequately allege those claims. Instead, they argue that various theories or other claims referred to in passing in the complaint fail to state a claim. Mr. McCormick did not respond to any of these arguments in his brief, and the Court agrees in each respect that Mr. McCormick's claims cannot proceed on these bases. Thus, the Court grants the motion to dismiss to the extent the complaint asserts any claims for violations of the plaintiffs' First or Sixth Amendment rights; for violations of state law or for defamation; or for violating 42 U.S.C. § 671. Again, however, this does not bar the claims for removing the children in violation of the plaintiffs' procedural due process rights or for violating the plaintiffs' fundamental right to familial relations. *See Brokaw*, 235 F.3d at 1017–22.

The complaint also asserts a count for conspiracy. However, a conspiracy is not itself a cognizable § 1983 claim, it is only a theory on which a defendant can be held personally

responsible for some other underlying violation. *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) ("Conspiracy is not an independent basis of liability in § 1983 actions."). The complaint does not allege an equal protection violation, either, as might support a claim for a conspiracy under 42 U.S.C. § 1985(3). *Brokaw*, 235 F.3d at 1024 (holding that a § 1985(3) claim requires an allegation of a "class-based" animus). The Court therefore dismisses Count 4.

Finally, the defendants argue that the complaint does not allege any basis to hold several of the defendants liable on any of the claims. Section 1983 requires personal responsibility; defendants can be held liable only if they "caused the deprivation of a federal right." *Brokaw*, 235 F.3d at 1012. Mr. McCormick's complaint contains no allegations of any conduct by three of the defendants: Ciboch, Bonaventura, and Stigdon. The introductory portion of the complaint identifies those individuals and their titles within the Department of Child Services, but Stigdon's name does not appear again in the entire complaint. The only further reference to Ciboch and Bonaventura is in a conclusory allegation that they violated various laws and regulations [DE 2 ¶ 83], but that sort of allegation does not suffice. Another defendant, Hernandez, is identified as an aunt of one of the children and as being in a custody battle for that child, but the complaint does not allege any way in which Hernandez took part in any of the alleged violations.

Mr. McCormick responds that all of the defendants were part of a conspiracy. Even then, however, the complaint would still need to offer allegations as to each defendant to support a plausible inference that that defendant was in fact part of the conspiracy. *Cooney*, 583 F.3d at 971 (affirming a dismissal where the complaint, "though otherwise detailed, is bereft of any suggestion, beyond a bare conclusion, that the remaining defendants were leagued in a conspiracy"); *Brokaw*, 235 F.3d at 1014 (holding that a complaint failed to state a claim against a

16

defendant because the plaintiff "merely alleged that [the defendant] conspired with the other defendants to violate his constitutional rights," without any allegations to suggest that the defendant had actually joined the conspiracy). Mr. McCormick's response brief does not even mention Ciboch, Bonaventura, and Stigdon. As to Hernandez, Mr. McCormick asserts that she was part of a conspiracy, but offers no argument for how the complaint plausibly supports that assertion. The complaint therefore fails to state a claim against any of those defendants, so the Court grants the motion to dismiss as to Hernandez, Ciboch, Bonaventura, and Stigdon.

The Court also notes that the complaint's caption lists "unnamed John Does 1–10," though the remainder of the complaint does not refer to any conduct by any such defendants. Generic references to unknown defendants serve no purpose, so the Court dismisses any claims against those defendants. *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997) ("[I]t is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back . . . nor can it otherwise help the plaintiff.").

## IV.  CONCLUSION

The Court GRANTS in part and DENIES in part the defendants' motion to dismiss. [DE 22]. The Court dismisses the claims against defendants Hernandez, Ciboch, Bonaventura, Stigdon, and any "John Doe" defendants. The Court also dismisses aspects of the remaining claims as outlined above, but otherwise denies the motion as to the claims against defendants Goebel, Black, and Mussman.

SO ORDERED.

ENTERED:  May 6, 2020

                                              /s/ JON E. DEGUILIO
                                          Judge
                                          United States District Court