UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RODNEY MCCORMICK, et al.<br><br>    Plaintiff,<br><br>    v.<br><br>MICHELLE GOEBEL, et al.,<br><br>    Defendants. | Case No. 3:19-CV-608 JD |

### OPINION AND ORDER

In December 2016, the Indiana Department of Child Services ("DCS") removed five of Rodney McCormick's children from his care pursuant to a court order finding both probable cause of abuse and exigent circumstances for removal. DCS had received a report earlier that day alleging Mr. McCormick was abusing the children; after investigating, DCS contacted the state court and sought removal. After the children were removed, Mr. McCormick was promptly notified, and a hearing was held within two business days. The Court found there was probable cause to believe abuse occurred and assigned responsibility for custody to DCS. The children were placed in the care of family members, and the case was supervised by a state court throughout.

Mr. McCormick, unsatisfied with his children's continued detention, lodged a campaign of death threats against DCS and the assigned case manager, Michelle Nell (née Mussman). He also refused to see or be contacted by Ms. Nell. This caused interruption to his visitation and made it difficult to reunite Mr. McCormick with his children. Despite this, DCS and Ms. Nell continued to work adequately on the children's cases. In August 2017, the state court dismissed the children's cases, returning them to their prior custody with their father. In 2019, Mr. McCormick

brought this suit on behalf of himself and his children against DCS, Ms. Nell, the initiating caseworker Elizabeth Black, their supervisor, Michelle Goebel, and a number of other parties, alleging violations of his and his children's Fourth Amendment and Fourteenth Amendment rights. Mr. McCormick alleged the children's emergency seizure violated their Fourth Amendment rights because it was based on misrepresentations by Defendants, that the children's continued detention and interruption of visitation violated his and his children's due process rights to family integrity because they were justified by misrepresentations, that the children's placements violated their due process rights to bodily integrity, and that misrepresentations offered by Defendants to the supervising court violated his and his children's procedural due process rights. Mr. McCormick also alleged the defendants participated in a conspiracy to deprive him and his children of their constitutional rights.

Defendants filed a Motion to Dismiss, which the Court granted in part and denied in part. (DE 34.) The conspiracy allegations were dismissed, as well as all defendants other than Ms. Nell, Ms. Black, and Ms. Goebel. *Id*. Defendants then filed a Motion for Summary Judgment. (DE 77.) In response to Defendants' Motion for Summary Judgment, Mr. McCormick did not deny Defendants' facts or submit a factual statement of his own. Instead, he filed a Motion to Strike consisting of numerous boilerplate hearsay objections without adequate supporting briefing. (DE 86.) The Court does not find these objections meritorious and deems Defendants' statement of facts admitted. Accordingly, there is no dispute of material fact, and the Court grants summary judgment on all Mr. McCormick's claims. Mr. McCormick's conclusory and inadequate briefing also failed to meet his burden to rebut Defendants' qualified immunity defense, justifying a grant of summary judgment on Mr. McCormick's remaining claims.

2

A. **Factual Background**

The following facts are undisputed. Mr. McCormick is the father of five children: T.M., C.H., A.M., L.M., and Q.M. On December 9, 2016, a Friday, DCS received a complaint from an anonymous source alleging that the children were victims of physical abuse and neglect. At that time, all the children resided with Mr. McCormick at least part-time. Ms. Black, a case worker at DCS, was assigned to perform the initial assessment of the abuse and neglect allegations. On the same day, Ms. Black interviewed the children at their schools. The children reported being repeatedly physically abused and locked out of the house by their father. Their stories were internally consistent and consistent with each other. One child expressed suicidal ideation. After interviewing the children, Ms. Black spoke with school staff, who reported facts consistent with the children's accounts.

On the basis of this information, Ms. Black believed it was in the best interests of the children to obtain an emergency detention order and discussed seeking such an order with Ms. Goebel. They decided to pursue the emergency detention order. That afternoon, Ms. Black testified to a court via phone regarding the children's disclosures and the need for an emergency detention order. The court found probable cause that the children were in need of services, granted the emergency order, and ordered the emergency removal of the children. The children were then removed. Two were placed with relatives, and the others were placed at a foster home. After removal, Ms. Black informed Mr. McCormick of the emergency detention.

Two days later, the children participated in forensic interviews. During these interviews, the children largely confirmed their earlier disclosures. On December 13, 2016, the Monday after the children's removal, the LaPorte Circuit Court held a hearing concerning the children's removal. Mr. McCormick attended the hearing and was represented by counsel. He entered a

denial of the abuse allegations. Nevertheless, the court issued an order confirming the removal and the exigency of the removal circumstances. The court further accepted DCS's recommendations regarding placement, services, and programs and ordered DCS to continue to be responsible for placement and care of the children. The children's cases were then transferred from Ms. Black to Ms. Nell.

The relationship between Mr. McCormick and DCS broke down immediately. On December 12, Mr. McCormick called the police and informed them that he would use any force necessary to protect himself and his property against DCS. Thereafter, Mr. McCormick's communications with DCS were characterized by threats of deadly force, threats of litigation, and the frequent use of expletives. On December 30, 2016, Mr. McCormick sent a letter containing death threats via certified mail to DCS. Mr. McCormick also lodged threats at others, including representatives of a family counseling organization, visit supervisors, and one child's relative placement. In light of Mr. McCormick's threats of violence, on January 11, 2017, DCS moved to suspend his visitation until DCS could provide for visitation in a secure setting.

The children remained under DCS care for several months, which were unremarkable save Mr. McCormick's continued threats of violence. Ms. Nell undertook the provision of services to the children, including monitoring their needs, exploring possible family placements for the children in foster care, arranging counseling services, and facilitating sibling visits. During these months, Ms. Nell investigated three complaints of incidents concerning the children, two of which were filed by Mr. McCormick. In each instance, Ms. Nell promptly investigated, often on the same or the next day. Ms. Nell questioned the affected child and the relevant party. In each instance, Ms. Nell determined the allegation was not substantiated, and the children remained in the care of their placement. The following cycle also recurred several

times: Ms. Nell attempted to arrange visitation with Mr. McCormick. Mr. McCormick continued his tirade of death threats against Ms. Nell, DCS, the children's relative placements, and the visitation supervisors. Predictably, the visitation supervisors became alarmed and declined to participate further, citing safety concerns. Visitation was suspended for some period while Ms. Nell attempted the Sisyphean task of locating facilities and supervisors for Mr. McCormick's visits. Visitation would resume for some brief amount of time, then again would halt upon repeat of this cycle.

Throughout the children's detention, the state court continued to supervise their cases. Mr. McCormick was afforded a variety of opportunities to be heard. He filed several motions, including a motion to dismiss the CHINS petitions,[1] a motion to correct error, and a petition for emergency placement. The court conducted hearings, which Mr. McCormick attended, but found Mr. McCormick's arguments unpersuasive and denied his motions. The court also issued orders regarding the children's placement and visitation, with which DCS complied. In March 2017, the La Porte Circuit Court issued an order modifying placement of the children in foster care. The court ordered the children be placed with their paternal grandmother, and Defendants promptly complied. In July 2017, the court denied Defendants' January motion to suspend visitation and ordered supervised visits resume between Mr. McCormick and three of the children.[2] A scheduled visit occurred August 2, 2017, despite a last-minute scramble caused by the visit supervisor's withdrawal one day prior.

---

[1] CHINS stands for Child in Need of Services. The Indiana Department of Child Services initiates a CHINS petition when it believes a child is experiencing abuse or neglect. A CHINS petition must show the intervention of the court is necessary to protect the child.

[2] The state court did not order visitation resume between Mr. McCormick and the two other children at the recommendation of the children's therapists.

In August and September, an informal adjustment ("IA") was entered for all children but T.M., permitting them to be in Mr. McCormick's care. The children were returned, their CHINS petitions were dismissed by agreement of the parties, and the IA was dismissed, fully resolving their cases. At about the same time, the court dismissed T.M.'s CHINS petition over DCS's objection, allowing him to return to his mother's custody and ending DCS's relationship with T.M. On August 14, 2017, Ms. Nell required T.M.'s relative placement to take a drug test. The test results were positive, but T.M.'s CHINS petition was dismissed before DCS could take action.

### B. Standard of Review

Summary judgment is warranted when the evidence viewed in a light most favorable to the non-moving party presents no genuine issue of material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, all disputed issues of fact are to be resolved in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "the nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial." *Warsco v. Preferred Tech. Grp.*, 258 F.3d 557, 563 (7th Cir. 2001) (citing *Celotex Corp v. Catttrett*, 477. U.S. 317, 324 (1986)). A party may not rest upon allegations in the pleadings; "it must go beyond the pleadings and support its contentions with proper documentary evidence." *Chemsource, Inc. v. HubGroup, Inc.*, 106 F.3d 1358, 1361 (7th Cir. 1997). "[I]f the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court must enter

summary judgment against her." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

### C. Preliminary Matters

The Court now takes a moment to clarify the manner in which it arrived at the undisputed facts stated above. Upon filing their Motion for Summary Judgment, Defendants properly filed a Statement of Facts containing nearly 250 numbered statements of facts with pinpoint citations to 62 supporting exhibits. (DE 79.) In response, Mr. McCormick did not file a proper response to Defendants' Statement of Facts as required by Local Rule 56-1(b)(2). Instead, Mr. McCormick filed a Motion to Strike attacking the admissibility of 33 of Defendants' exhibits (DE 86) and a Response to Defendant's Statement of Facts lodging boilerplate legal attacks against each statement rather than admitting or denying them. (DE 89.) The Court finds Mr. McCormick's hearsay objection to the admission of DCS's case notes are without merit. The Court strictly enforces Local Rule 56-1 and finds that all properly supported facts as alleged by Defendants are deemed admitted by Mr. McCormick's failure to admit or deny them in his response. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-219 (7th Cir. 2015).

#### (1) Failure to Dispute Facts

Mr. McCormick failed to state a dispute of facts because he did not admit or deny the moving party's facts as required by Local Rule 56-1. The district court is entitled to require strict enforcement with its local rules. *Curtis,* 807 F.3d at 219. Local Rule 56-1 requires parties to file separate statements of material facts concisely stating the facts of the case in dispute. The factual statements must be numbered, and the parties must cite to evidence supporting each fact. *See* L.

R. 56-1(a)(3). The moving party begins by filing their statement of facts, after which the non-movant files a correspondingly numbered response identifying which facts are in dispute. *See* L. R. 56-1(b)(2)(B). Defendants properly met their burden under Local Rule 56-1 by filing a statement of material facts replete with citations to the record. (DE 79.) In response to Defendants' statement of material facts, Mr. McCormick filed a 73-page document containing form objections to almost every single fact alleged by Defendants. (DE 89.) These objections failed to admit or deny the facts stated by Defendants; instead, Mr. McCormick wrote only that each statement relies on an exhibit that "contains impermissible hearsay, is not admissible at trial or in any hearing, and should be struck from the record." (DE 89 at 2.) Boilerplate legal objections alone are not contemplated by the local rule and are insufficient to constitute a denial of facts. *Curtis*, 807 F.3d at 219 (affirming grant of summary judgment where nonmovant responded with boilerplate objections, failed to admit or deny facts, and did not cite to admissible evidence in support of his denials); *see also Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004) (responses that do not admit or deny movant's facts are improper). "The non-moving party's failure to admit or deny facts as presented in the moving party's statement or to cite to any admissible evidence to support facts presented in response by the non-moving party render the facts presented by the moving party as undisputed." *Curtis*, 807 F.3d at 2018–19. Thus, the facts as alleged by Defendants are deemed admitted, and the Court adopts the undisputed facts. *See Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) (affirming summary judgment where district court deemed defendant's facts admitted after plaintiff failed to comply with similar local rule).

      The Court is entitled to rely upon the parties' 56-1 statements. *F.T.C. v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 634 (7th Cir. 2005). It is not obligated to search for disputes of facts

8

in the briefing or record; "judges are not like pigs, hunting for truffles buried in briefs." *Smith v. Lamz*, 321 F.3d at 683. However, were the Court to entertain a porcine impulse, it would be of no benefit to Mr. McCormick, because he failed to provide any evidence supporting his allegations. Mr. McCormick's response brief alludes to facts inconsistent with those stated by Defendants: that Defendants mischaracterized the evidence, failed to consider the relevant evidence, and were biased against him. (DE 87.) But he does not attach or cite to any evidence in support of these allegations in his response brief. On motion for summary judgment, "the non-moving party is required to marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010) (referring to summary judgment as the "put up or shut up" phase in litigation). Conclusory allegations without proper evidentiary support—as Mr. McCormick has offered here—do not suffice to state facts. *See Porter v. City of Chicago*, 700 F.3d 944, 956 (7th Cir. 2012); *see also* Fed.R.Civ.P. 56(c)(1)(A). Where the nonmovant attempts to dispute facts without citing evidence, the Court may deem the moving party's facts admitted. *Senske v. Sybase, Inc.*, 588 F.3d 501, 503 n.1 (7th Cir. 2009). Even after affording tremendous leeway to Mr. McCormick, the Court arrives at the conclusion Defendants' facts are undisputed.

### (2) Motion to Strike

The Court must now address Mr. McCormick's evidentiary objections. If the undisputed statements of fact are not supported by proper admissible evidence, they cannot be considered facts for the purpose of summary judgment. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). Therefore, it is important to determine whether Mr. McCormick's evidentiary objections have merit, because the admissibility of the evidence determines the scope of the facts on

summary judgment. Mr. McCormick has objected to a significant number of Defendants' exhibits, including several relied upon heavily by Defendants. These challenges are repetitive and cursory, reading only: "[Exhibit] is inadmissible under Federal rules of Evidence 803 as it contains hearsay, and lacks any indicia of authenticity, and because it was an impermissible method in which to raise a genuine issue of material fact, and is not admissible as evidence." (DE 86 at 2.) The Court is not obligated to address individually these boilerplate hearsay challenges. *See Holder v. Fraser Shipyards, Inc.*, 288 F. Supp. 3d 911, 922 n.4 (W.D. Wis. 2018) (confining to a footnote discussion of party's rampant and ill-founded hearsay objections on summary judgment). Indeed, the Court could not begin to guess what basis Mr. McCormick had for these objections, as he only briefs a single objection against a single exhibit. (DE 86 at 2.) Failure to articulate why a statement is hearsay is sufficient to waive the objection. *Torry v. City of Chicago*, 932 F.3d 579, 585 (7th Cir. 2019) ("dispensing with" underdeveloped argument failing to explain why the statement was offered for the truth of the matter asserted). Therefore, the Court finds Mr. McCormick's objections unsupported by argument waived. The Court now addresses the single briefed hearsay objection of any merit: whether some records are inadmissible as business records.

  Evidence submitted at summary judgment must be admissible at trial, at least if a party objects. *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 955–56 (7th Cir. 2021). Defendants attached as evidence the entire DCS case file, which contains more than 60 separate documents, and assert it is admissible as a business record under Federal Rule of Evidence 803(6). Though Mr. McCormick filed boilerplate hearsay objections against 31 documents, his only argument concerns the case workers' notes, contained in Exhibit 19. He argues that records kept by DCS case workers are "categorically inadmissible" because they do not have the indicia

of reliability of traditional business records, citing two Indiana state law cases. Those cases are inapposite; most obviously because they do not interpret the Federal Rules of Evidence, by which this Court is bound. *Cf. Love v. United States*, 17 F.4th 753, 756 (7th Cir. 2021) (federal rules of evidence control over inconsistent state rules in federal court). Mr. McCormick does not cite any federal authority to support his argument, and the Court has not located any. In any event, Mr. McCormick grossly misstates the holdings of these cases. Far from stating categorical prohibitions, the cases cited are highly fact-specific and turn on finer points of Indiana evidence law. *See, e.g., In re Termination of Parent-Child Relationship of E.T.*, 808 N.E.2d 639 (Ind. 2004) (taking issue with records prepared for use by DCS by outside agency and referencing the high burden required to terminate a parent-child relationship). The Court is not persuaded that DCS's notes are categorically inadmissible as business records.

In contrast, the case workers' notes as submitted to this Court meet the straightforward definition of a business record. To qualify as a business record under the hearsay exception, a document must be made at or near the time of the act or event by someone with knowledge and be kept in the normal course of business as a regular practice of the business or entity. *Datamatic Servs., Inc. v. United States*, 909 F.2d 1029 (7th Cir. 1990). The record also must be authenticated by a qualified witness. Fed.R.Evid. 803(6)(D). The case workers' notes meet these requirements. To begin with, our circuit has not recognized any categorical prohibition on notes as business records; notes may be prepared in the normal course of business when they are taken and kept as records as part of a business's regular practices. *See Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 776 (7th Cir. 2006) (finding notes of interviews admissible under business records exception). Exhibit 19 contains hundreds of pages of case workers' real-time notes logged on specialized software recording events of the cases as they occurred. (DE 77-14–17). The Court

11

has reviewed the notes and finds they meet the requirements of the business records exception, noting that the computerized note system identifies the author and time of each entry, and the entries uniformly contain information sufficient to determine they meet the personal knowledge and timeliness requirements. The Court also finds persuasive the volume and format of the notes; they document a vast number of mundane interactions relating to the case, indicating both trustworthiness and the routine nature of the case workers' notetaking. Additionally, the note software indicates the entries are locked and cannot be edited after a brief period, further supporting the trustworthiness of the notes. The Court admits the case workers' notes contained in Exhibit 19 as business records.

Finally, many hearsay statements within the admitted records are admissible because they fall under other hearsay exceptions. *See Woods v. City of Chicago*, 234 F.3d 979, 986 (7th Cir. 2000). When multiple levels of hearsay are present, an exception must apply to each level. *United States v. Borrasi*, 639 F.3d 774, 780 (7th Cir. 2011). While the Court will not exhaust the reader with analysis of every statement within each document, two major exceptions cover nearly all the second-level hearsay statements. Most obviously, all statements by Mr. McCormick and the children constitute party opponent statements, making them not hearsay under Federal Rule of Evidence 801(d)(2). *See generally Jordan v. Binns*, 712 F.3d 1123, 1128 (7th Cir. 2013) (discussing the broad scope of 801(d)(2)). In addition, statements offered for a purpose other than to prove the truth of the matter are not hearsay. *United States v. Norwood*, 798 F.2d 1094, 1097 (7th Cir. 1986). Defendants assert both probable cause and qualified immunity as defenses to Mr. McCormick's claims. Both defenses concern the state of mind of the officer. *Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000) (third-party statements admissible to show their effect on the officers where probable cause was at issue); *Jewett v.*

*Anders*, 521 F.3d 818, 826 n.5 (7th Cir. 2008) (same where qualified immunity at issue). As such, these statements are admissible to the extent they are offered to show their impact on the case workers rather than for the truth of the matter asserted. *See Torry v. City of Chicago*, 932 F.3d 579, 585 (7th Cir. 2019) (admitting statements within police report for their impact on the officer).

### D. Discussion

With the facts established, the Court is able to make light work of Mr. McCormick's arguments. Summary judgment is appropriate for all Defendants because Mr. McCormick has not stated a material dispute of fact entitling him to recovery. *See* Fed. R. Civ. P. 56(a). His response brief is woefully inadequate; it relies on allegations not supported by evidence of any kind, fails to cite to legal authority, and waives dispositive issues by failing to provide any legal analysis. Simply put, Mr. McCormick's legal arguments do not contain adequate detail or citations to authority to show he is entitled to relief. Part of this is likely due to page limitations of Mr. McCormick's own making; he expends fifteen pages of his response brief reiterating (without analysis) more than 200 of Defendant's factual statements. (DE 88 at 3–18.) Confined to an afterthought, his legal arguments are impermissibly conclusory and underdeveloped. At least two sections consist solely of a paragraph stating the rule copied verbatim from circuit court opinions with no additional analysis. *Compare* DE 88 at 21 *with Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1020 (7th Cir. 2000); *compare* DE 88 at 23 *with Xiong v. Wagner*, 700 F.3d 282, 289 (7th Cir. 2012). The Court can only conclude that Mr. McCormick hoped to knock out all of Defendants' stated facts via his boilerplate objections, leaving the Court with no facts stated by either party to consider. This strategy was ineffective, and the Court now grants summary

judgment because the undisputed facts do not support Mr. McCormick's claims or entitlement to recovery.

### (1) Failure to Cite Evidence of Misrepresentations

Mr. McCormick's Fourth Amendment, procedural due process, and due process claims for ongoing detention and interruption to visitation rely on an allegation he has not properly supported at this stage: that Defendants intentionally misrepresented facts in order to detain the children. The allegations of misrepresentation are essential to these claims; without such allegations, Mr. McCormick's claims have no force. Mr. McCormick's claims survived a motion to dismiss because the Court must accept the allegations in the complaint as true at that stage. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). However, on summary judgment, the complaint is not accorded the same deference. On summary judgment, "[t]he nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." *Warsco v. Preferred Tech. Grp.*, 258 F.3d 557, 563 (7th Cir. 2001). Mr. McCormick continues to allege these misrepresentations as his sole basis of liability, but this allegation was neither stated in his Statement of Disputed Facts nor supported by any admissible evidence. His failure to cite to evidence supporting this allegation is fatal. *See Gross v. Town of Cicero*, 619 F.3d 697, 707 (7th Cir. 2010) (affirming summary judgment where plaintiff failed to present evidence on key element of claim). "[I]f the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in [his] favor on a material question, then the court *must* enter summary judgment against [him]." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918 (7th Cir. 1994) (affirming summary judgment where local rule statement of facts lacked

14

citations) (emphasis original). Mr. McCormick did not provide any evidence of a misrepresentation, nor does the evidence tendered by the defendants support a misrepresentation, rendering Mr. McCormick's Fourth Amendment, procedural due process, and continued detention and interruption to visitation claims hollow of any theory of law that would allow for recovery. In this "put up or shut up" moment, Mr. McCormick has failed to put up. Therefore, the Court finds summary judgment is appropriate on all claims relying on alleged misrepresentations as the sole basis of liability: Mr. McCormick's Fourth Amendment claim, procedural due process claim, and substantive due process claims for violation of his and his children's rights to familial integrity caused by the children's continued detention and interrupted visitation.

### *(2) Qualified Immunity*

Mr. McCormick's remaining substantive due process claims for violation of his children's rights to bodily security are similarly doomed by his underdeveloped arguments. These claims deal with the condition of the children's placements during their time under the care of IDCS, namely, that the children in foster care were abused and that one child was placed in the care of a relative who used marijuana. Defendants have argued they are entitled to qualified immunity, and Mr. McCormick's response brief is grossly inadequate to refute their qualified immunity defense. His conclusory and underdeveloped briefing in response to Defendants' Motion for Summary Judgment both waived the argument and failed to meet his burden; therefore, summary judgment is appropriate on his remaining claims.

The Court holds that Ms. Nell is entitled to qualified immunity on the remaining substantive due process claims because Mr. McCormick's underdeveloped arguments failed to

15

meet his burden.³ To be explicit, Mr. McCormick's briefing is so inadequate that it would reasonably constitute a waiver of *any* argument made in this manner. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718. (7th Cir. 2012) (arguments are waived if they are "underdeveloped, conclusory, or unsupported by law"). "A party will be deemed to have waived a claim for failing to cite both legal authority and supporting factual evidence." *De v. City of Chicago*, 912 F. Supp. 2d 709, 733–34. (N.D. Ill. 2012). One of Mr. McCormick's arguments consists solely of a single paragraph stating the general standards for qualified immunity, which was copied without citation from *Xiong*, *see* 700 F.3d at 289. (DE 88 at 23.) No analysis applying facts to the law is present, and the Court is therefore entitled to find the claim waived. *See Donelson v. City of Chicago*, 272 F. Supp. 2d 717, 726 (N.D. Ill. 2003) (argument waived because no serious legal arguments or effort to respond exhibited). Another qualified immunity argument is two sentences long and is devoid of any citation to legal authority. (DE 88 at 24.) This is also sufficient to constitute waiver of the argument. *See Mahaffey v. Ramos,* 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.")

These failures of briefing are more egregious yet where, as in the case of qualified immunity, the law places a significant burden on the plaintiff. "On a qualified immunity claim, the court confronts two questions: (1) whether the plaintiff's allegations make out a deprivation

---

³ Ms. Black is not a proper party to Mr. McCormick's Fourteenth Amendment claims because she lacks personal involvement in the conduct. *See Vinning-El v. Evan*s, 657 F.3d 591, 593 (7th Cir. 2011) ("Section 1983 creates liability only for a defendant's personal acts or decisions."). Ms. Black was involved only in the initial removal and did not have any involvement in the children's continued detention. Therefore, there can be no liability for Ms. Black for constitutional violations that occurred during the children's ongoing detention. Similarly, Mr. McCormick has not stated a basis for Ms. Goebel's liability. Supervisors are liable only if they were personally involved in the constitutional violation. *Taylor v. Ways*, 999 F.3d 478, 493–94 (7th Cir. 2021). "Personal involvement in a subordinate's constitutional violation requires supervisors to know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Id*. While Mr. McCormick previously alleged involvement by Ms. Goebel, he has not presented evidence in support those allegations. On summary judgment, he states only that she was a supervisor of the conduct, which is insufficient to create liability.

of a constitutional right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Ault v. Speicher*, 634 F.3d 942, 946 (7th Cir. 2011). It is the plaintiff's burden to show that the constitutional right was clearly established. *Landstrom v. Illinois Dep't of Child. & Fam. Servs.*, 892 F.2d 670, 676 (7th Cir. 1990). They can do this one of two ways: by pointing to precedent clearly establishing the constitutional right or by "showing that the violation was so obvious that a reasonable person would have known of the unconstitutionality of the conduct at issue." *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1022 (7th Cir. 2000). If the plaintiff fails to make such a showing, the defendant will prevail. *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017).

Mr. McCormick has not identified cases establishing a clear constitutional violation of any asserted rights, nor has he argued his case presents an obvious violation. The Court begins with the claim regarding the placement of the children in foster care. To meet his burden, Mr. McCormick would need to make some specific argument about the children's rights to be removed from a foster home after unsubstantiated reports of child abuse. He does not. In lieu of making a robust argument identifying a clearly established right violated by the children's placements, Mr. McCormick writes only, "[t]he Fourteenth Amendment guarantees that 'a child has a constitutional right to be placed into a safe and secure foster home.'" (DE 88 at 24) (citing *Waubanascum v. Shawano Cnty.*, 416 F.3d 658 (7th Cir. 2005)). While this general proposition appears to support Mr. McCormick's claim at first blush, a savvy jurist must read on. The very next sentence of *Wubanascum* explains: "Specifically, we have recognized that state actors are liable only if they violated the right of a child in state custody not to be handed over by state officers to a foster parent or other custodian whom the state knows or suspects to be a child abuser." *Id*. *Waubanascum* does not clearly establish the unconstitutionality of the children's

17

placements because the undisputed facts do not indicate Defendants knew or suspected the children were being abused while in their placements. Mr. McCormick's only basis for his claim are the reports of abuse by the children's placements investigated by Ms. Nell. Our circuit has found that during a child's time in the care of IDCS, unsubstantiated reports of abuse alone are insufficient to create suspicion of child abuse under the reasonable case worker standard. *J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 794 (7th Cir. 2003). The facts show Ms. Nell promptly investigated reports of abuse—frequently made by Mr. McCormick himself—and did not find them credible. The Court finds a reasonable case worker could have arrived at the same conclusion. Therefore, Ms. Nell's actions do not give rise to liability. *See Xiong v. Wagner*, 700 F.3d 282, 293 (7th Cir. 2012) (case worker properly granted qualified immunity where brief investigation after child's injury would not have led a reasonable case worker to suspect abuse).

Mr. McCormick's argument concerning T.M.'s relative placement, who tested positive for marijuana, does not fare much better. He states only: "It makes sense that the Department of Child Services would avoid placing children into an environment where they will be exposed in any way shape or form to illegal substances[.] [W]hether marijuana was smoked in the presence of the child or not, they should not be placed in the home of a foster parent who uses something that is against the laws of the State of Indiana." (DE 88 at 24.) "It makes sense" is not a proper basis for establishing a constitutional violation. *See Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473–73 (7th Cir. 2011) (party must provide a closely analogous case or some evidence of patently violative conduct to establish a right). Even generously construing this meager statement as an obviousness argument, it cannot succeed because it runs contrary to controlling precedent. *See Cibulka v. City of Madison*, 992 F.3d 633 (7th Cir. 2021) (obvious violations must be supported by "some settled authority"). The standard for case worker liability is knowing or

suspecting the caregiver will abuse the child, not knowing or suspecting the caregiver will smoke weed. *Cf. K.H. Through Murphy v. Morgan,* 914 F.2d 846, 853 (7th Cir. 1990) (rejecting a broader right to a stable foster-home environment and noting the real-world limitations in options for foster placement). Mr. McCormick's scant argument is insufficient to meet his burden under qualified immunity, and the Court may properly grant summary judgment. *See Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018) (affirming judgment as a matter of law where plaintiff failed to meet burden on second prong of qualified immunity).

### E. Conclusion

Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment (DE 77) on all claims against all remaining Defendants. The Court INSTRUCTS the clerk to prepare a judgment.

The Court also DENIES Mr. McCormick's Motion to Strike (DE 86) and DENIES as moot Defendant's Motion to Strike Plaintiff's Motion to Strike (DE 92). The Court further GRANTS Defendants' Motion to Maintain Exhibits Under Seal (DE 81), finding that maintaining the exhibits under seal is in compliance with and advances the purpose of Federal Rule of Civil Procedure 5.2.

SO ORDERED.

ENTERED: February 7, 2023

/s/ JON E. DEGUILIO
Chief Judge
United States District Court